**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marie Mann, ) | No. CV-11-8018-PCT-LOA |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant. ) | |
| ) | |

      This medical negligence action was brought pursuant to the Federal Tort Claims Act ("FTCA") and is before the Court on Defendant's Motion to Dismiss: Motion to Exclude Plaintiff's Expert. (Doc. 24)  The United States (the "Government") seeks either dismissal of this action for failure to state a claim upon which relief can be granted, in accordance with Federal Rule of Civil Procedure ("Rule") 12(b)(6), or summary judgment, pursuant to Rule 56. On December 14, 2011, the Court construed the motion to be one for summary judgment, directed the Government to file a statement of facts in compliance with Local Rule ("LRCiv") 56.1(a), and set a briefing schedule. (Doc. 25)  The parties have filed briefs addressing the motion which is now ripe for ruling. (Docs. 26-28)

      Based on the record, federal and Arizona law, the Government's motion for summary judgment will be granted in part and denied in part. The Court will preclude Plaintiff's medical liability expert from testifying but will not enter judgment pending resolution of the applicability of, and briefing on, the doctrine of *res ipsa loquitur*.

**I. Background**

The parties do not dispute the underlying facts giving rise to this lawsuit. On November 26, 2007, with pains in her chest, abdomen, weakness, and blood loss, Plaintiff was admitted to Fort Defiance Indian Hospital (the "hospital"), located near Window Rock, Arizona, the capitol of the Navajo Nation,[1] for in-patient medical care and treatment. (Doc. 1, ¶¶ 9-10 at 3)  On December 1, 2007, she "fell from the toilet after being left unattended in the bathroom and broke her left femur." (*Id*., ¶¶ 12-13 at 3)  The hospital is an Indian Health Service facility, operating under the jurisdiction of the United States Department of Health and Human Services, pursuant to a contract with Defendant United States of America. (*Id.*, ¶ 3)  Pursuant to various federal statutes, the hospital provides medical care to Native Americans, like Plaintiff who is a tribal member and resident of the Navajo Nation. (*Id.*, ¶¶ 3, 6)

**A. The Allegations**

The Complaint alleges that the medical and nursing staff at the hospital "had a duty to exercise reasonable care and to possess and use the degree of skill and learning ordinarily used in the same or similar circumstances by members of the medical profession." (*Id.*, ¶ 16)  Specifically, the Complaint alleges that the medical personnel involved in Plaintiff's care committed the following acts of negligence and carelessness by failing to measure up to the standards of reasonable care, skill, and practice required of members of the medical and nursing professions, to wit:

   a. in negligently and carelessly failing adequately to supervise and care for Ms. Mann;

   b. in negligently and carelessly failing to provide Ms. Mann with proper medical care;

   c. in negligently and carelessly failing to respond to Ms. Mann's need for assistance;

   d. in negligently and carelessly leaving Ms. Mann alone and unattended on the toilet in her weakened state;

   e. in negligently and carelessly failing to measure up to the requisite standards of care

---

[1] See, www.ihs.gov/navajo/index.cfm?module=nao_hcc_fort_defiance (last visited on January 24, 2012)

- 2 -

and skill required and observed in the field of medicine, and in further particulars presently unknown to plaintiffs, but which are verily believed and alleged will be disclosed during discovery in the course of the litigation.

(*Id.*, ¶ 17) Plaintiff contends these negligent acts or omissions were "[c]onducted by employees and staff of [the hospital], and therefore of the United States, according to the FTCA[;]" "direct[ly] and proximate[ly] cause[d]" Plaintiff's injuries; and the Government "is liable for the acts of its employees acting within the course and scope of their employment relationship." (*Id.*, ¶¶ 18-20)

The Government does not dispute that the hospital's employees were acting within the scope of their employment at the time of Plaintiff's injury, but denies its employees were medically negligent or caused Plaintiff's injuries, and alleges defenses available under the FTCA, third party negligence, comparative negligence, and other related affirmative defenses. (Docs. 7, ¶ 21 at 4; 10 at 1-2)  Alternatively, the Government's Answer avers that if it is liable for Plaintiff's injuries because of its employees' alleged negligent acts or omissions, "[t]he United States of America [is] liable only in the same manner and to the same extent as a private individual under like circumstances." (Docs. 7, ¶ IV at 5)

### B. Plaintiff's Expert Witness

On July 11, 2011, the Court held a Rule 16(b) scheduling conference and issued a scheduling order, setting various firm deadlines for the judicial management of this case, including deadlines for Plaintiff's disclosure of expert opinions and reports required under Rule 26(a)(2)(B) by November 4, 2011; the Government's expert disclosures by December 9, 2011, and Plaintiff's rebuttal expert disclosures, if any, by January 6, 2012. (Doc. 20 at 4) Discovery in this case will end on April 20, 2012. No trial date has been set.

On November 7, 2011, the Government was informed, and the docket confirms, that Plaintiff disclosed her liability expert witness, Susan Acquisto, R.N., and provided defense counsel with her *curriculum vitae* and a written report, containing her expert opinions. (Docs. 22; 26, Defendant's Statement of Facts ("DSOF"), Exhibits ("Exh.") 1 and 2)  The disclosures provide that Nurse Acquisto is the president of Regulatory, Risk, Compliance

Specialists, Inc., which is based in Pleasanton, California. (Doc. 26-1, Exh. 2 at 6) Nurse Acquisto identifies her qualifications to offer expert testimony as "[p]rofessionally recognized and board certified by the American Nurses' Association Credentialing Center as an Advanced Practice Nurse in Nursing Administration . . . [with a] Master's Degree in Health Care Administration in 1990 from California State University, Long Beach . . . ." (Doc. 26-1, Exh.1 at 3)  She is currently licensed as a registered nurse by the State of California and has "over 25 years of experience in geriatrics, medical surgical and critical care nursing with an emphasis on hospital and long-term care administration, regulatory and accreditation compliance, standards of care, education and training." (*Id.*) Nurse Acquisto's November 7, 2011 report further notes that she is a "consultant and trainer for many hospitals as well as implement based fall prevention programs in hospitals and long term care facilities." (*Id.*)

Nurse Acquisto's report indicates that Plaintiff's "x-ray confirmed an age-determinate oblique fracture extending through the left distal femoral metaphysis, with mild medial displacement and angulation." (*Id.* at 3-4)  Nurse Acquisto opined that "[t]here was a failure of the appropriate licensed nursing staff to properly assess, care plan and monitor the fall risk for Mrs. Mann. As a direct result of this breach of the standard of care, [Plaintiff] was not prevented from risk of fall and necessitating transfer to the hospital for repair of her fractured femur." (*Id.* at 4)

While Nurse Acquisto's report is signed by her and the Government does not challenge the timeliness of its disclosure, it is undisputed that Plaintiff did not file a preliminary expert affidavit, signed and verified by Nurse Acquisto, in support of Plaintiff's medical malpractice claims with her initial disclosures or at any time thereafter. (DSOF, ¶ 5) Further, the Government's Statement of Facts is not controverted that "Nurse Acquisto has not devoted the majority of her professional time during the year immediately preceding Plaintiff's fall to either the active clinical practice of the same health profession as Defendant, nor the instruction of students in the same health profession as Defendant."

(DSOF, ¶ 4)

**C. Motion for Summary Judgment**

The Government moves for summary judgment on two grounds: First, it claims "[P]laintiff has failed to comply with substantive provisions of Arizona Revised Statue (sic) § 12-2604, which require Plaintiff to submit a preliminary expert affidavit in support of medical malpractice claims. Having failed to comply with ARS § 12-2604, Plaintiff cannot prove medical malpractice." (Doc. 24 at 1) Second, the Government contends "[P]laintiff's expert [fails] to qualify as an expert under Arizona law." (*Id.*) Relying on Arizona statutory authority, Federal Rule of Evidence 601, and various federal and State cases, the Government argues that Nurse Acquisto must be precluded from testifying as Plaintiff's liability expert. "Without expert testimony on the standard of care or to prove breach of duty and causation, Plaintiff is unable to sufficiently adduce evidence that could lead a reasonable trier of fact to conclude that she has satisfied her burden of proof on her claims of medical malpractice." (Doc. 24 at 6)

Responding to the Government's motion, Plaintiff does not object (takes "[n]o exception") to the Government's Statement of Facts, doc. 26, and has not filed her own statement of facts. More significantly, however, Plaintiff does not request leave to submit a preliminary expert affidavit even though it would be untimely under either Arizona law or the scheduling order. (Doc. 27 at 1) While her arguments are less than clear, Plaintiff responds that Arizona's statutory medical malpractice laws are procedural, not substantive, in nature as "[t]he requirements of the Arizona Medical Malpractice Act are foreign to the Federal Rules of Evidence, Federal Rules of Civil Procedure and the Federal Tort Claims Act[,]" citing 28 U.S.C. § 2072, *Hanna v. Plummer*, 380 U.S. 460, 472-73 (1965), and other Supreme Court precedent. (Doc. 27 at 4)

Alternatively, Plaintiff argues that, even if the Arizona Medical Malpractice Act is controlling substantive law and Plaintiff's expert is excluded, "[a]n expert is not essential to the proof" of the Government's negligence because the Government's "employees took her

to the commode, recognizing her need for assistance in getting there . . . [and] left [her] unattended in an obvious position of peril." (*Id.* at 4)  Without using its legal terms or citing any authorities, Plaintiff contends that the doctrine of *res ipsa loquitur* is applicable to this case and a liability expert is not required. See *Ward v. Mount Calvary Lutheran Church*, 178 Ariz. 350, 355, 873 P.2d 688, 693 (Az.Ct.App. 1994) ("[T]he doctrine of *res ipsa loquitur* will be applied only when it is a matter of common knowledge among laymen or medical [experts], or both, that the injury would not ordinarily have occurred if due care had been exercised.") (citation and internal quotation marks omitted); *Revels v. Pohle*, 101 Ariz. 208, 210, 418 P.2d 364, 366 (Ariz. 1966) ("[t]here is an exception to the rule that is as well settled as the rule itself, and that is expert testimony is not required where . . . the negligence is so grossly apparent that a layman would have no difficulty in recognizing it.") (citation omitted)). In *Revels*, a standard-of-care expert was not required for plaintiff to establish a *prima facie* case of medical negligence where pieces of steel sutures were left in a patient after an operation. *Id.*

The Government's Reply argues, *inter alia*, that "Plaintiff waives arguments regarding her violation of substantive state law[,]" Plaintiff's reliance on several Supreme Court cases are "inapposite," the determinative "issues are whether Plaintiff is obligated to comply with substantive Arizona law in filing a medical malpractice lawsuit against the United States under the [FTCA], and whether Plaintiff's expert should be allowed to testify." (Doc. 28 at 1-2)  The Government does not address Plaintiff's argument that she does not need to call a liability medical expert witness to establish the applicable standard of care, a breach of that standard, or the issue of causation. *Id.*

**II. Jurisdiction**

Federal courts may exercise jurisdiction over claims only where authorized by the Constitution or federal statute. *Exxon Mobil Corp. v. Allapattah Services, Inc*., 545 U.S. 546, 552 (2005); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In 28 U.S.C. § 1331, Congress granted district courts jurisdiction to adjudicate cases arising under

the United States Constitution or federal statutes. 28 U.S.C. § 1331. The Federal Tort Claims Act ("FTCA") specifies that

> [d]istrict courts . . . have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992) (The FTCA "vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees."); *Sierra v. Lincoln Family Medicine*, 2008 WL 5068807, \* 2 (D.Or. November 24, 2008). Additionally, all parties have consented in writing to magistrate-judge jurisdiction, pursuant to 28 U.S.C. § 636(c). (Doc. 15)

The District Court of Arizona and the undersigned Magistrate Judge have jurisdiction to adjudicate this case on its merits.

**III. Applicable Law**

    **A. The Federal Tort Claims Act**

The Federal Tort Claims Act is the exclusive remedy for suits against the United States or its agencies sounding in tort. 28 U.S.C. § 2679(b)(1); *United States v. Smith*, 499 U.S. 160, 161-62 (1991); *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) ("FTCA is the exclusive remedy for tortious conduct"). The FTCA is a limited waiver of the United States's sovereign immunity, authorizing a plaintiff to sue the United States for damages in compensation for injuries resulting from certain torts of employees of the Government acting within the scope of their employment. 28 U.S.C. § 1346(b). "The FTCA 'was designed . . . to render the Government liable in tort as a private individual would be under like circumstances.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (citation omitted); *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002); *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994). The Supreme Court has "[c]onsistently adhered to this 'private person' standard." *United States v. Olson*, 546 U.S. 43, 46 (2005). As a limited

- 7 -

waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the sovereign. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992); *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995).

By statute, the FTCA authorizes tort claims "in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. "[B]ecause 'there is no general civil tort law applicable to the United States,' liability is determined under state law." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995) (quoting *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991)). "As a general rule, domestic liability on the part of the federal government under the [FTCA] is determined in accordance with the law of the state where the event giving rise to liability occurred." *Id.*; *see also Craft*, 157 F.3d at 706 ("With minor exceptions, FTCA claims are governed 'in accordance with the law of the place where the act or omission occurred.' 28 U.S.C. § 1346(b)"); *Gil v. Reed*, 535 F.3d 551, 558 n. 2 (7th Cir. 2008) ("In FTCA cases, state law applies to substantive questions and federal rules govern procedural matters."). "To determine the liability of a private person, 'we are to look to the law of the state 'where the act or omission occurred.'" *Thomas v. United States*, 2011 WL 64028, * 1 (W.D.Ky. January 7, 2011) (quoting *Crider v. United States*, 885 F.2d 294, 296 (5th Cir. 1989) (quoting 28 U.S.C. § 1364(b)). Thus, the Government's liability, if any, for this FTCA medical negligence action is determined by Arizona's substantive tort law.

Although Arizona law supplies the substantive law governing a FTCA claim, the Federal Rules of Civil Procedure establish the procedural rules for the adjudication of such a claim. *Wright v. United States*, 2008 WL 820557, * 3 (D.Ariz. March 25, 2008 ) (citing *United States v. Yellow Cab Co*., 340 U.S. 543, 553 & n. 9 (1951); *Taylor v. United States*, 821 F.2d 1428, 1432 (9th Cir. 1987)).

A substantive state law is one that gives rise to "[state-created] rights and obligations in such a way that its application in federal court is required." *Amor v. Arizona*, 2010 WL 960379, * 6 (D.Ariz. March 15, 2010) (quoting *Byrd v. Blue Ridge Rural Elec. Co-op*., 356

U.S. 525, 535 (1958)). A law is substantive if it would "significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court." *Hanna v. Plumer*, 380 U.S. 460, 466 (1965). The outcome-determinative test must be read with "reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id*. at 468 (referring to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The inquiry is "[w]hether the federal policy . . . should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court. *Amor*, 2010 WL 960379, * 6 (quoting *Byrd*, 356 U.S. at 538). "[B]ecause the Federal Rules [of Civil Procedure] are not sufficiently broad to cover th[is] issue before this Court, and in furtherance of the twin aims of *Erie*," the court in *Amor* found A.R.S. § 12-2603 is applicable to a FTCA medical negligence action in the District Court of Arizona. *Id*. at * 9.

### B. Arizona Medical Negligence Law

In medical malpractice actions, as in all Arizona negligence actions, a plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages. *Seisinger v. Siebel*, 220 Ariz. 85, 94, 203 P.3d 483, 492 (Ariz. 2009) (citation omitted); *Adeogba v. United States*, 2006 WL 2821668, * 2 (D.Ariz. September 27, 2006) (citing *Gipson v. Kasey*, 129 P.3d 957, 960 (Az.Ct.App. 2006)). Under Arizona law, medical malpractice claims are governed by statute. *Bailey-Null v. ValueOptions*, 221 Ariz. 63, 70, 209 P.3d 1059, 1066 (Az.Ct.App. 2009) (citing *Nunsuch v. United States*, 221 F.Supp.2d 1027, 1032-33 (D.Ariz. 2001)). "A medical malpractice action is one 'for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services . . . or other health-related services, without express or implied consent.'" *Id.* (quoting Arizona Revised Statute ("A.R.S.") § 12-561(2) (2003)).

In a medical negligence case, the "yardstick" by which a physician's or other

healthcare provider's compliance with his duty is measured is commonly referred to as the "standard of care." *Seisinger*, 220 Ariz. at 94, 203 P.3d at 492. A plaintiff must prove negligence by presenting evidence that the healthcare provider fell below the applicable standard of care and that the deviation from the standard of care proximately caused the claimed injury. *Ryan v. San Francisco Peaks Trucking Co., Inc.*, 228 Ariz. 42, 262 P.3d 863, 869-70 (Az.Ct.App. 2011) (citing A.R.S. § 12-563); *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54, 699 P.2d 925, 928 (Az.Ct.App. 1985) (expert medical testimony required to establish proximate cause unless a causal relationship is readily apparent to the trier of fact.). "Arizona courts have long held that the standard of care normally must be established by expert medical testimony." *Seisinger*, 220 Ariz. at 94, 203 P.3d at 492 (citations omitted). A plaintiff must "present expert evidence of the accepted conduct of the profession and the defendant's deviation from that standard unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it." *Nunsuch*, 221 F.Supp.2d at 1032-33 (holding that in an FTCA action for medical malpractice, governing Arizona law requires that where the negligence is not grossly apparent, plaintiff must present expert witness testimony) (citing *Valencia v. United States*, 819 F.Supp. 1446 (D.Ariz. 1993)). Allegations of negligence that do not require the support of expert testimony typically involve patently outrageous behavior, such as leaving instruments in the patient's body. See, *e.g.*, *Rudy v. Meshorer*, 706 P.2d 1234, 1237 (Az.Ct.App. 1985).

Beginning in 2004, Arizona statutory law requires a plaintiff who asserts a medical negligence claim against a healthcare professional to support her claim with expert opinion testimony regarding the health care professional's standard of care. A.R.S. § 12-2603(A), (D); *Hardy v. Catholic Healthcare West*, 2010 WL 5059602, * 2 (Az.Ct.App. December 7, 2010). "The expert must be licensed as a health care professional in Arizona or another state, and in the year immediately preceding the occurrence giving rise to the lawsuit, must have devoted a majority of his or her 'professional time' to either: (1) active clinical practice of the same health care profession as the defendant; or (2) the instruction of students in an

accredited health care professional school or accredited residency or clinical research program in the same health care profession as the defendant." *Hardy*, 2010 WL 5059602 at * 2 (citing A.R.S. § 12-2604(A)(2) (2005)).

"Under § 12–2603(A), a plaintiff who asserts a claim against a health care professional in a civil action must certify 'whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim.'" *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 319, 183 P.3d 1285, 1287 (Az.Ct.App. 2008) (quoting A.R.S. § 12-2603(A)). "If the claimant certifies [liability] expert testimony is necessary, 'the claimant shall serve a preliminary expert opinion affidavit with the initial disclosures that are required by rule 26.1, Ariz[. R. Civ. P].'" *Id.* (quoting § 12–2603(B)). Arizona's statutory scheme mandates that a plaintiff's expert's "[a]ffidavit must contain, at a minimum, four elements: the expert's qualifications for providing an opinion on the standard of care, the factual basis of the claim, the acts that violated the standard of care, and the manner in which those acts harmed the claimant." *Id.*, 218 Ariz. at 319-20, 183 P.3d at 1287-88. "The companion statute, § 12–2604(A), sets forth the minimum qualifications for an expert to provide testimony on the appropriate standard of care: the expert witness must be 'licensed as a health professional' and must specialize in the same specialty 'as the party against whom . . . the testimony is offered.'" *Id.*

In *Seisinger*, the Arizona Supreme Court found that the State legislature's codification of the common law's elements of a medical malpractice action in A.R.S. § 12–563[2] is

---

[2] A.R.S. § 12-563 provides as follows:

Both of the following shall be necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care:

1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances.

2. Such failure was a proximate cause of the injury.

- 11 -

"plainly substantive."

> [B]ecause § 12–563 defines the elements of a cause of action, it is plainly substantive. Section 12–2604(A) is substantive in much the same sense. It "regulates rights," [citation omitted] by modifying the common law to increase a plaintiff's burden of production with respect to a statutory element of the tort, departure from the standard of care. Before the enactment of § 12–2604(A), [a plaintiff] could satisfy that burden by presenting the testimony of [an expert witness], assuming he qualifies as an expert under Rule 702. After § 12–2604(A) became effective, the same evidence is not sufficient, as a matter of law, to avoid summary judgment. The statute thus did not merely alter court procedures, but rather changed the substantive law as to what a plaintiff must prove in medical malpractice actions. [citation omitted] *Legg*, 286 F.3d at 290 ("State witness competency rules are often intimately intertwined with a state substantive rule. This is especially true with medical malpractice statutes, because expert testimony is usually required to establish the standard of care.").

220 Ariz. at 95, 203 P.3d at 493. Arizona substantive law in medical negligent cases includes all the requirements found in the companion statutes, A.R.S. §§ 12-2603 and 12-2604.

### C. The Doctrine of *Res Ipsa Loquitur*

"Because the validity of permitting a suit under res ipsa loquitur depends on the facts and circumstances of each case, it is very difficult to generalize regarding the doctrine's applicability." *Jackson v. H.H. Robertson Co.*, 118 Ariz. 29, 32, 574 P.2d 822, 825 (Ariz. 1978); *Sanchez v. Tucson Orthopaedic Institute*, P.C., 220 Ariz. 37, 202 P.3d 502 (Az.CtApp. 2008). "Res ipsa loquitur is 'a rule of circumstantial evidence where the trier of fact is permitted . . . to draw an inference of negligence from the happening of an accident of a kind which experience has shown does not normally occur if due care is exercised.'" *Brookover v. Roberts Enterprises, Inc.*, 215 Ariz. 52, 57, 156 P.3d 1157, 1162 (Az.Ct.App. 2007) (quoting *McWain v. Tucson Gen. Hosp.*, 137 Ariz. 356, 359, 670 P.2d 1180, 1183 (Az.Ct.App. 1983) (citation omitted)).

Generally, for *res ipsa loquitur* to be applicable, a plaintiff must show that the accident is of a kind that ordinarily does not occur in the absence of negligence, that the accident was caused by an agency or instrumentality subject to the control of the defendant, and that the plaintiff is not in a position to show the circumstances that caused the agency

---

A.R.S. § 12-563 (1994).

- 12 -

or instrumentality to operate to its injury. *Brookover*, 215 Ariz. at 57-58, 156 P.3d at 1162-63 (citing *Lowrey v. Montgomery Kone, Inc.*, 202 Ariz. 190, 192, 42 P.3d 621, 623 (Az.Ct.App. 2002)).

"*Res ipsa loquitur* (meaning the thing speaks for itself) is 'a rule of circumstantial inference of responsibility for an injury.'" *Lowrey*, 202 Ariz. at 192, 42 P.3d at 623 (citation omitted). "A plaintiff who establishes the elements of *res ipsa loquitur* can avoid summary judgment and reach the jury without direct proof of negligence." *Id.* (citation omitted). "Whether *res ipsa loquitur* applies is preliminarily a question of law for the court." *Id.* (citation omitted). Because the doctrine of *res ipsa loquitur* is simply a rule of circumstantial evidence and gives rise to an inference of responsibility for an injury, it need not be pled in the complaint. *McKeever v. Phoenix Jewish Community Center*, 92 Ariz. 121, 123, 374 P.2d 875, 877 (Ariz. 1962) (citing, among others, *Eisenbeiss v. Payne*, 42 Ariz. 262, 25 P.2d 162 (Ariz. 1933)). *The res ipsa loquitur* doctrine "[d]oes not have to be pleaded in the complaint or 'noticed' by specific designation to the adverse party at pre-trial or at trial, since it is neither a cause of action nor a ground for recovery . . . ." *Fassbinder v. Pennsylvania Railroad Company*, 322 F.2d 859, 863 (3d Cir. 1963) (*en banc*).

### D. Federal Rule of Evidence 601

Generally, the Federal Rules of Evidence apply to all federal civil actions and proceedings. Fed.R.Evid. 1101(b) ("These rules apply in civil cases and proceedings, including bankruptcy, admiralty, and maritime cases; . . . ."); *Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002). One exception is Rule 601, which provides, in relevant part, that "[i]n a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Rule 601, Fed.R.Evid. "Under Fed. R. Civ. 601, federal courts apply state witness competency rules in both FTCA and diversity actions." *Wright*, 2008 WL 820557 at 4 (citations omitted).

In *Wright*, a FTCA case alleging medical negligence claims against various physicians and nurses employed at the V.A. Hospital in Phoenix, District Judge Neil V.

- 13 -

Wake found that "[u]nder Arizona law, A.R.S. § 12-2604 establishes the criteria a person must meet to be permitted to give expert testimony on the appropriate standard of practice or care in an action alleging medical malpractice." *Id*. Relying on Fed.R.Evid. 601, A.R.S. § 12-2604, and other federal cases, Judge Wake granted summary judgment in favor of the Government because plaintiff's expert could not give expert witness testimony on the appropriate standard of practice or care due to her failure to meet A.R.S. § 12-2604's criteria, citing *Hill v. United States*, 751 F.Supp. 909, 910 (D.Colo.1990) (state requirement that in medical malpractice actions plaintiffs must file a certificate of review by a licensed physician certifying their claim is made with substantial justification applied in FTCA action); *Miville v. Abington Mem'l Hosp*., 377 F.Supp.2d 488, 493 (E.D.Pa. 2005) (in diversity action, under Fed.R.Evid. 601, expert witnesses were required to satisfy state statute titled "Expert Qualifications," which was a rule of witness competency rather than a rule of expert qualification). *See also*, *Ellingson v. Walgreen Co.*, 78 F.Supp.2d 965, 968 (D.Minn. 1999) (finding medical malpractice expert review statute is substantive under *Erie* doctrine, and is not superceded by the Federal Rules of Civil Procedure); *contra*, *Poindexter v. Bonsukan*, 145 F.Supp.2d 800 (E.D.Tex. 2001)).

In *Wright*, unlike the case *sub judice*, plaintiff's expert provided an affidavit, albeit an untimely one, which set forth conclusions without factual data that, during the year immediately preceding plaintiff's hospital admission, she devoted the majority of her professional time to the active clinical practice of internal medicine. According to Judge Wake, the affidavit of plaintiff's expert, a licensed physician who was board certified in the specialty of internal medicine, was deficient because it failed to provide the necessary elements required by A.R.S. § 12-2604(A), that is, the expert:

> 1. (a) specialized at the time of the occurrence in the same specialty as the party against whom the testimony is offered if the party against whom the testimony is offered is or claims to be a specialist and (b) is board certified in that specialty if the party against whom the testimony is offered is or claims to be a board certified specialist.
>
> 2. devoted a majority of the expert's professional time during the year immediately

> preceding the time of the occurrence to either or both (a) the active clinical practice of the same health profession as the defendant and the same specialty, if any; (b) instruction of students in the same health profession as the defendant in the same specialty, if any, as the defendant.
>
> 3. If the defendant is a general practitioner, devoted a majority of her professional time in the year preceding the time of the occurrence to either or both (a) active clinical practice as a general practitioner; (b) instruction of students in the same health profession as the defendant.

2008 WL 820557 at 6; A.R.S § 12-2604(A) (2005)). Because plaintiff's expert was precluded from testifying, summary judgment was granted in favor of the Government "because as a matter of law Wright cannot prove essential elements of a medical malpractice case without an expert witness." *Id.* at 9.

**IV. Standard of Review**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Jesinger*, 24 F.3d at 1130.

The movant on a summary judgment motion bears the initial burden of providing a legal basis for its motion and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing

that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Jt.Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). All inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Eastman Kodak Co. v. Image Tech'l Servs., Inc.*, 504 U.S. 451, 456 (1992).

**V. Discussion**

The Court agrees with the court in *Wright*, which did not have the benefit in March 2008 of the Arizona Supreme Court's discussion in *Seisinger* one year later, that A.R.S. § 12–563, including A.R.S. § 12-2604(A), are Arizona's "plainly substantive" laws regarding medical negligence actions. *Seisinger,* 220 Ariz. at 95, 203 P.3d at 493. Contrary to Plaintiff's arguments that Rule 702 controls the admission of expert opinion testimony in federal courts, Rule 601 mandates that federal courts apply state witness competency rules in both FTCA and diversity actions. See, *Legg v. Chopra*, 286 F.3d 286, 289-92 (6th Cir. 2002) (finding no conflict between FRE 601, which deals with a witness's competency, and FRE 702, . . . "is a measure of qualification, as it is directed at the science and methodology behind the witness's testimony, and is therefore a procedural issue." ); *see also*, *McDowell v. Brown*, 392 F.3d 1283, 1294-97 (11th Cir. 2004) ("The analysis we engage in then, is first whether the expert is qualified to render an opinion regarding the standard of care (the competency component), and second, whether the expert's causation theory meets the strictures of Rule 702."). By failing to comply with the requirements in A.R.S. § 12-2604(A), Plaintiff's expert, Nurse Acquisto, is not competent to testify that the Government's nurses breached the applicable standard of care in this FTCA medical negligence action.

Preclusion of Plaintiff's expert as a witness and granting the Government's summary judgment motion are consistent with Arizona law. In *Hardy v. Catholic Healthcare West*, 2010 WL 5059602 (Az.Ct.App. December 7, 2010), the plaintiffs alleged two hospitals, and a plastic surgeon negligently provided medical care to their son, Steven, a quadriplegic, who

received in-patient treatment and out-patient care for pressure sores. In particular, the Hardys alleged one of the Phoenix hospitals failed to provide appropriate pre- and post-operative care to Steven and failed to properly instruct the Hardys regarding at-home wound care, nutrition, and positioning. The Hardys failed to offer evidence, however, that their two medical experts, a plastic surgeon and a registered nurse, were in active clinical practice or providing instruction regarding wound care in the year preceding Steven's injuries, as required by A.R.S. § 12-2604. One of the hospitals moved for summary judgment, arguing the Hardys' experts were not competent to offer standard of care opinions against the hospital's nurses because they did not devote a majority of their professional time to either the practice or instruction of the type of medical care the hospital provided to Steven, *i.e.*, wound care nursing. The trial court granted summary judgment in favor of the hospital and the Hardys appealed.

The Arizona Court of Appeals affirmed, finding that because the Hardys "offered no evidence that [their plastic surgeon expert] was in active clinical practice or providing instruction regarding wound care in the year preceding Steven's injuries, as required by A.R.S. § 12-2604(A)(2)(a) . . . [she] was not qualified under Arizona law to offer standard of care testimony against St. Joe's in this matter." *Id.* at 3. The Arizona court also noted the Hardys' nursing expert's "experience did not satisfy the requirements of A.R.S. § 12-2604(A)(2) because she did not devote the majority of her professional time to active clinical practice and/or the instruction of students in an accredited health professional school or accredited residency or clinical research program." *Id.* at 4. "Thus, as a matter of law, Nurse Lockhart was not a qualified expert under A.R.S. § 12-2604." *Id.*

"As neither Dr. Hollan nor Nurse Lockhart satisfied the statutory requirements for an expert in a medical malpractice case, the Hardys were unable to establish that [the hospital] breached the applicable standard of care, and the superior court properly granted the motion for summary judgment." *Id.* A similar result must be rendered in this FTCA case.

## VI. Conclusion

Having failed to comply with Arizona substantive law, the Court will preclude Plaintiff's medical liability expert from testifying in this action but judgment will not be entered pending resolution of the applicability of, and briefing on, the doctrine of *res ipsa loquitur* as it may apply to the facts of this case. In the exercise of its discretion, the Court hereby grants Defendant leave to file a motion for summary judgment, if appropriate, on the applicability of doctrine of *res ipsa loquitur*, provided it is filed on or before the May 25, 2012 dispositive motion deadline.

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Dismiss: Motion to Exclude Plaintiff's Expert, doc. 24, is **GRANTED** in part and **DENIED** in part. Plaintiff's liability expert witness, Susan Acquisto, R.N., is precluded from testifying in this case. Defendant's request for summary judgment, however, is denied without prejudice.

Dated this 31st day of January, 2012.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge