**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marie Mann, ) | No. CV-11-8018-PCT-LOA |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The United States (the "Government") moves for summary judgment on Plaintiff's claims for negligence under the doctrine of *res ipsa loquitur*. (Doc. 31) The Government contends that Plaintiff may not rely upon *res ipsa loquitur* under Arizona law where, as here, 1) the alleged injury was not caused by patently outrageous behavior or circumstances that would be within the common knowledge of lay persons; and 2) Plaintiff was in a position to show the particular circumstances that caused her injuries. (*Id*. at 1) The Court has previously precluded Plaintiff's medical liability expert witness from testifying in this action due to Plaintiff's failure to comply with Arizona substantive law regarding expert witnesses. *See Mann v. U.S.*, 2012 WL 273690 (D.Ariz. January 31, 2012). (Doc. 29) The Court expressly reserved ruling on the applicability of the doctrine of *res ipsa loquitur* pending further motion and briefing by the parties. (*Id*. at 11)

After considering the briefing and applicable law, the Court grants summary judgment in favor of the Government and terminates this action.

**I. Background**

On November 26, 2007, Plaintiff was admitted to Fort Defiance Indian Hospital (the "hospital"), located near Window Rock, Arizona, for in-patient medical care and treatment with pains in her chest and abdomen, weakness, and blood loss. (Doc. 1, ¶¶ 9-10 at 3)  On December 1, 2007, Plaintiff "fell from the toilet after being left unattended in the bathroom and broke her left femur." (*Id.*, ¶¶ 12-13 at 3) The hospital is an Indian Health Service facility, operating under the jurisdiction of the United States Department of Health and Human Services, pursuant to a contract with Defendant United States of America. (*Id.*, ¶ 3) Pursuant to various federal statutes, the hospital provides medical care to Native Americans, like Plaintiff, a member and resident of the Navajo Nation. (*Id.*, ¶¶ 3, 6)

**A. The Allegations**

The Complaint alleges the hospital's medical personnel involved in Plaintiff's care committed numerous acts of negligence and carelessness by failing to meet the standards of reasonable care, skill, and practice required of members of the medical and nursing professions, to wit:

1. negligently and carelessly failing adequately to supervise and care for Ms. Mann;

2. negligently and carelessly failing to provide Ms. Mann with proper medical care;

3. negligently and carelessly failing to respond to Ms. Mann's need for assistance;

4. negligently and carelessly leaving Ms. Mann alone and unattended on the toilet in her weakened state;

5. negligently and carelessly failing to measure up to the requisite standards of care and skill required and observed in the field of medicine, and in further particulars presently unknown to plaintiffs, but which are verily believed and alleged will be disclosed during discovery in the course of the litigation.

(*Id.*, ¶ 17) Plaintiff contends these negligent acts or omissions were conducted by employees of the hospital, which "direct[ly] and proximate[ly] cause[d]" Plaintiff's injuries; and the Government "is liable for the acts of its employees acting within the course and scope of their employment relationship." (*Id.*, ¶¶ 18-20)

The Government does not dispute that the hospital's employees were acting within

the scope of their employment at the time of Plaintiff's injury, but denies its employees were medically negligent, caused Plaintiff's injuries, and avers that "[t]he United States of America [is] liable only in the same manner and to the same extent as a private individual under like circumstances." (Docs. 7, ¶ IV at 5)

The Government moves for summary judgment because "Plaintiff cannot pursue *res ipsa loquitur* where she cannot show that she [was] not in a position to show the particular circumstances that caused her injuries." (Doc. 31 at 1) Having lost the use of her expert witness for failing to comply with Arizona substantive law, Plaintiff may not now rely on the doctrine of *res ipsa loquitur* to establish a *prima facie* case of medical negligence and causation. "[A]rizona law has never applied the *res ipsa loquitur* doctrine to relieve a claimant of the necessity of securing expert testimony when such testimony would be required to establish the prerequisites for applying the doctrine[,]" citing *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 321, 183 P.3d 1285, 1289 (Az.Ct.App. 2008) (quoting *Ward v. Mount Calvary Lutheran Church*, 178 Ariz. 350, 355, 873 P.2d 688, 693 (Az.Ct.App. 1994)). (*Id.* at 2-3)

Plaintiff's Statement of Facts, doc. 38,[1] contains inadmissible hearsay, but the Government has not filed either an objection or controverting statement of facts to the inadmissible portions of Plaintiff's Statement of Facts. Pursuant to Rule 56(e)(2), Fed.R.Civ.P., the Court will consider these facts as undisputed for purposes of this motion. *See* Rule 56(e)(2), Fed.R.Civ.P. Thus, Plaintiff relies on the following facts to justify use of the *res ipsa loquitur* doctrine or, in other words, the lack of necessity to present a standard-of-care expert at trial.

It is undisputed that on November 26, 2007, Plaintiff, age 63, was admitted to the hospital's emergency room with acute symptoms of chest pain, tachycardia, and anemia, and a history of black stools. (PSOF, ¶ 1; doc. 38-17 at 1, Exh. 17) Her medical history included

---

[1] Plaintiff's Statement of Facts are referred to as "PSOF" throughout this order. (Doc. 38 at 1-6)

severe osteoporosis, Type II diabetes, and cardiac abnormalities. (*Id.*) Plaintiff was admitted to the hospital's intensive care unit ("ICU") with a diagnosis of anemia (low red blood cells) that was likely due to an upper GI blood loss, tachycardia (rapid heart rate) due to dehydration, and/or hypoxemia (deficient oxygenation of the blood). (*Id.*) (footnote omitted). On November 27, while a patient in the emergency room and ICU, Plaintiff was confused at times, and very fatigued. (PSOF, ¶ 2) On December 1, Plaintiff was transferred to the medical surgical floor. Her level of functioning at this time required assistance with her ADLs (activities of daily living), basic hygiene, and transfers, and her "Patient Care Classification" indicated that during "movement/transportation" she required an assistant for all shifts. (PSOF, ¶¶ 10-12) That same day, Plaintiff continued to be fatigued and feeble. (PSOF, ¶ 14) A nursing assessment indicated Plaintiff experienced shortness of breath upon exertion, had "crackles" in both lungs, required oxygen by a nasal cannula, had limited range of movement with unsteady gait, generalized weakness, and used a cane. (*Id.*) While a patient on the medical surgical floor, "fall risk signage" was posted outside of Plaintiff's room. (PSOF, ¶ 17) The exact wording of the sign was not provided to the Court.

On December 1, at 8:30 p.m., after visiting hours were over, a nurse's aide assisted Plaintiff to the bathroom. (PSOF, ¶ 19) The nurse's aide verbally reminded Plaintiff to call her when Plaintiff was ready to get up off the toilet. (Doc. 38-16 at 1, Exh. 16) ("2030 Nurse aid assisted pt to bathroom. Reminded to call when ready to get up. Nurse passed by room pt yelled and was on floor in the bathroom. Called for help. . . .") It is unknown how long Plaintiff had been left alone on the commode before the nurse's aide heard her yell and found Plaintiff on the floor in the bathroom. (*Id.*) It is undisputed that as a result of Plaintiff's fall off the toilet, she fractured her left distal femur and needed surgery. (PSOF, ¶¶ 20, 23) She does not recall how she fell and has "only an uncertain recollection of the circumstances prior to [my] fall and immediately after [my] fall." (Exh. 1, Affidavit of Plaintiff, ¶ 13; doc. 38-1 at 2) Plaintiff does not provide any evidence of the medical significance of Plaintiff's blood work on the issues of liability and causation in her Statement of Facts.

## II. Jurisdiction

Federal courts may exercise jurisdiction over claims only when authorized by the Constitution or federal statute. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In 28 U.S.C. § 1331, Congress granted federal courts jurisdiction to adjudicate cases arising under the United States Constitution or federal statutes. 28 U.S.C. § 1331. The Federal Tort Claims Act ("FTCA") specifies that

> [d]istrict courts . . . have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992) (The FTCA "vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees."); *Sierra v. Lincoln Family Medicine*, 2008 WL 5068807, * 2 (D.Or. November 24, 2008). Additionally, all parties have consented in writing to magistrate-judge jurisdiction, pursuant to 28 U.S.C. § 636(c). (Doc. 15)

## III. Summary Judgment Standard

A district court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jesinger*, 24 F.3d. at 1130. In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Summary

judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex*, 477 U.S. at 323. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Lind Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

**IV. Governing Law**

    **A. The Federal Tort Claims Act**

The Federal Tort Claims Act is the exclusive remedy for suits against the United States or its agencies sounding in tort. 28 U.S.C. § 2679(b)(1); *United States v. Smith*, 499 U.S. 160, 161-62 (1991); *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) ("FTCA is the exclusive remedy for tortious conduct"). The FTCA is a limited waiver of the United States's sovereign immunity, authorizing a plaintiff to sue the United States for damages in compensation for injuries resulting from certain torts of employees of the Government acting within the scope of their employment. 28 U.S.C. § 1346(b). "The FTCA 'was designed . . . to render the Government liable in tort as a private individual would be under like circumstances.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (citation omitted); *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002). The Supreme Court has "[c]onsistently adhered to this 'private person' standard." *United States v. Olson*, 546 U.S.

43, 46 (2005). As a limited waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the sovereign. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992); *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995).

By statute, the FTCA authorizes tort claims "in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. "[B]ecause 'there is no general civil tort law applicable to the United States,' liability is determined under state law." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995) (citation omitted); *Rhoden v. United States*, 55 F.3d 428, 430 (9th Cir. 1995) (*per curiam*). "As a general rule, domestic liability on the part of the federal government under the [FTCA] is determined in accordance with the law of the state where the event giving rise to liability occurred." *Young*, 71 F.3d at 1242; *see also Craft*, 157 F.3d at 706 ("With minor exceptions, FTCA claims are governed 'in accordance with the law of the place where the act or omission occurred.' 28 U.S.C. § 1346(b)"); *Gil v. Reed*, 535 F.3d 551, 558 n. 2 (7th Cir. 2008) ("In FTCA cases, state law applies to substantive questions and federal rules govern procedural matters."). "To determine the liability of a private person, 'we are to look to the law of the state 'where the act or omission occurred.'" *Thomas v. United States*, 2011 WL 64028, * 1 (W.D.Ky. January 7, 2011) (quoting *Crider v. United States*, 885 F.2d 294, 296 (5th Cir. 1989) (quoting 28 U.S.C. § 1364(b)). Thus, the Government's liability, if any, for this FTCA medical negligence action predicated upon the *res ipsa loquitur* doctrine is determined by Arizona's substantive tort law. *Nunsuch v. United States*, 221 F.Supp.2d 1027, 1032 (D.Ariz. 2001).

Although Arizona law supplies the substantive law governing a FTCA claim, the Federal Rules of Civil Procedure establish the procedural rules for the adjudication of such a claim. *Wright v. United States*, 2008 WL 820557, * 3 (D.Ariz. March 25, 2008 ) (citing *United States v. Yellow Cab Co.*, 340 U.S. 543, 553 & n. 9 (1951); *Taylor v. United States*, 821 F.2d 1428, 1432 (9th Cir. 1987)).

A substantive state law is one that gives rise to "[state-created] rights and obligations

in such a way that its application in federal court is required." *Amor v. Arizona*, 2010 WL 960379, * 6 (D.Ariz. March 15, 2010) (quoting *Byrd v. Blue Ridge Rural Elec. Co-op*., 356 U.S. 525, 535 (1958)). A law is substantive if it would "significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court." *Hanna v. Plumer*, 380 U.S. 460, 466 (1965). The outcome-determinative test must be read with "reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id*. at 468 (referring to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Neither party addresses whether the *res ipsa* doctrine is procedural in nature in which case federal law controls or substantive in which Arizona law controls. The Ninth Circuit has stated, however, that "[w]hether res ipsa loquitur may be applied to a given set of facts is a question of state law, . . . ." *Dunn v. Grand Canyon Airlines, Inc*., 66 F.3d 334, * 2 (9th Cir. 1995) (citations omitted); *see also Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) ("State doctrines of res ipsa loquitur are respected in federal court because the doctrine has assumed the status of a substantive rule of law, affecting plaintif's burden of proof or production of evidence[.]"); *Oresman v. G.D. Searle & Co.*, 321 F.Supp. 449, 454 (D.R.I. 1971) ("Although the doctrine of res ipsa loquitur is an evidentiary rule, the federal courts have uniformly ruled that it is a matter of substance to be governed by state law.") (citations omitted).

### B. The Doctrine of *Res Ipsa Loquitur*

Under Ninth Circuit and Arizona law, "[r]es ipsa loquitur is a form of circumstantial evidence that permits an inference of negligence to be drawn from a set of proven facts." *Ashland v. Ling-Temco-Vought, Inc*., 711 F.2d 1431, 1437 (9th Cir. 1983) (citation omitted); *Brookover v. Roberts Enterprises, Inc*., 215 Ariz. 52, 57, 156 P.3d 1157, 1162 (Az.Ct.App. 2007) ("[r]es ipsa loquitur is a rule of circumstantial evidence where the trier of fact is permitted . . . to draw an inference of negligence from the happening of an accident of a kind

which experience has shown does not normally occur if due care is exercised.") (citation and internal quotation marks omitted)). In Arizona, "[f]or *res ipsa loquitur* to be applicable, a plaintiff must show that the accident is of a kind that ordinarily does not occur in the absence of negligence, that the accident was caused by an agency or instrumentality subject to the control of the defendant, and that the plaintiff is not in a position to show the circumstances that caused the agency or instrumentality to operate to its injury. *Brookover*, 215 Ariz. at 57-58, 156 P.3d at 1162-63 (citing *Lowrey v. Montgomery Kone, Inc.*, 202 Ariz. 190, 192, 42 P.3d 621, 623 (Az.Ct.App. 2002)); *see also McShane-Powers v. Folkestad*, 2012 WL 504030, * 2 (Az.Ct.App. February 16, 2012). "A plaintiff who establishes the elements of *res ipsa loquitur* can avoid summary judgment and reach the jury without direct proof of negligence." *Lowrey*, 202 Ariz. at 192, 42 P.3d at 623 (citing *Ward v. Mount Calvary Lutheran Church*, 178 Ariz. 350, 354, 873 P.2d 688, 692 (Az.Ct.App. 1994)). In Arizona, like the Ninth Circuit, "[w]hether *res ipsa loquitur* applies is preliminarily a question of law for the court." *Id.*; *Ashland*, 711 F.2d at 1437 ("It is a question of law whether *res ipsa* may apply to a given set of facts.") (citation omitted).

Because the doctrine of *res ipsa loquitur* is simply a rule of circumstantial evidence and gives rise to an inference of responsibility for an injury, it need not be pled in the complaint. *McKeever v. Phoenix Jewish Community Center*, 92 Ariz. 121, 123, 374 P.2d 875, 877 (Ariz. 1962) (citing, among others, *Eisenbeiss v. Payne*, 42 Ariz. 262, 25 P.2d 162 (Ariz. 1933)); see *Fassbinder v. Pennsylvania Railroad Company*, 322 F.2d 859, 863 (3d. Cir. 1963) (*en banc*) (The doctrine "[d]oes not have to be pleaded in the complaint or 'noticed' by specific designation to the adverse party at pre-trial or at trial, since it is neither a cause of action nor a ground for recovery . . . .").

### C. Arizona Medical Negligence Law

In medical malpractice actions, as in all Arizona negligence actions, a plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages. *Seisinger v. Siebel*, 220 Ariz. 85, 94, 203 P.3d 483, 492 (Ariz. 2009) (citation omitted); *Adeogba v.*

*United States*, 2006 WL 2821668, * 2 (D.Ariz. September 27, 2006) (citing *Gipson v. Kasey*, 129 P.3d 957, 960 (Az.Ct.App. 2006)). Under Arizona law, medical malpractice claims are governed by statute. *Bailey-Null v. ValueOptions*, 221 Ariz. 63, 70, 209 P.3d 1059, 1066 (Az.Ct.App. 2009) (citing *Nunsuch v. United States*, 221 F.Supp.2d 1027, 1032-33 (D.Ariz. 2001)). "A medical malpractice action is one 'for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services . . . or other health-related services, without express or implied consent.'" *Id.* (quoting Arizona Revised Statute ("A.R.S.") § 12-561(2) (2003)).

In a medical negligence case, the "yardstick" by which a physician's or other healthcare provider's compliance with his duty is measured is commonly referred to as the "standard of care." *Seisinger*, 220 Ariz. at 94, 203 P.3d at 492. A plaintiff must prove negligence by presenting evidence that the healthcare provider fell below the applicable standard of care and that the deviation from the standard of care proximately caused the claimed injury. *Ryan v. San Francisco Peaks Trucking Co., Inc.*, 228 Ariz. 42, 262 P.3d 863, 869-70 (Az.Ct.App. 2011) (citing A.R.S. § 12-563); *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54, 699 P.2d 925, 928 (Az.Ct.App. 1985) (expert medical testimony required to establish proximate cause unless a causal relationship is readily apparent to the trier of fact.). "Arizona courts have long held that the standard of care normally must be established by expert medical testimony." *Seisinger*, 220 Ariz. at 94, 203 P.3d at 492 (citations omitted). A plaintiff must "present expert evidence of the accepted conduct of the profession and the defendant's deviation from that standard unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it." *Nunsuch*, 221 F.Supp.2d at 1032-33 (holding that in an FTCA action for medical malpractice, governing Arizona law requires that where the negligence is not grossly apparent, plaintiff must present expert witness testimony) (citing *Valencia v. United States*, 819 F.Supp. 1446 (D.Ariz. 1993)). If the *res ipsa loquitur* doctrine applies, allegations of negligence that do not require

- 10 -

the support of expert testimony typically involve patently outrageous behavior, such as leaving surgical instruments in a patient's body. *See e.g.*, *Rudy v. Meshorer*, 706 P.2d 1234, 1237 (Az.Ct.App. 1985); *Tiller v. Von Pohle*, 72 Ariz. 11, 230 P.2d 213 (1951) (holding res ipsa can be used in medical malpractice case in which a cloth sack was found in patient's body and only one operation occurred); *but see McShane-Powers*, 2012 WL 504030, * 4 (finding the argument that the *res ipsa* doctrine avoids the affidavit requirement of § 12–2603 was "misplaced" because "[i]t is not obvious that a surgeon's standard of care includes ensuring the absence of surgical material in the patient's body before completing surgery."). "In sum, the superior court did not err by requiring McShane-Powers to obtain and serve a preliminary affidavit." *Id*.

**V. The Arguments**

The Government relies upon *Falcher v. St. Luke's Hosp. Medical Ctr.*, 19 Ariz. App. 247, 506 P.2d 287 (Az.Ct.App. 1973) in support of its argument that Plaintiff's factual allegations do not qualify for the *res ipsa* doctrine under Arizona law. (Doc. 31 at 4-5) The *Falcher* court addressed the "narrow question" of whether the *res ipsa* doctrine applies when a patient falls from a hospital bed or carts and, following California law, held that it does not because "[a]s a matter of law, that in the common experience of laymen, patients do not ordinarily fall from hospital beds or carts absent a failure to exercise due care." *Falcher*, 19 Ariz. App. at 251, 506 P.2d at 291. "Thus, the first prerequisite to invocation of the doctrine of [r]es ipsa loquitur set out [under Arizona law, *i.e.*, the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence], was not met, and the trial judge properly refused to give the plaintiff's instruction." *Id.*

The Government argues that the *Falcher* analysis applies here. "Just as in *Falcher*, Plaintiff's alleges that she fell at [a] hospital while being treated. Inquiring into Plaintiff's allegations necessarily involves soliciting expert medical opinions as to: assessments of the Plaintiff's medical condition before and leading up to the incident; what changes, if any, effected the judgments of the medical providers in their assessment of allowing Plaintiff to

- 11 -

toilet herself, the benefits and risks associated with allowing the Plaintiff to toilet herself, and so on." (Doc. 31 at 4) "[A]s in *Falcher*, Plaintiff's allegations are not of the type that may be advanced under res ipsa loquitur because Plaintiff's alleged harms are not of the sort that fall within 'common experience.'" (*Id.*) (footnote omitted[2])

Plaintiff's response fails to even discuss *Falcher*, much less distinguish its facts from those in this case. (Doc. 37)  She emphasizes the particular facts in her Statement of Facts, provides little discussion or analysis of *res ipsa* under Arizona law, and argues "[t]he nurse's aide assisted plaintiff to the toilet, and left her there. Here, the elements of Cox v. May Department Store, [183 Ariz. 361, 903 P.2d 1119 (Az.Ct.App. 1995)], are clearly met." She does not explain why *Cox* is germane when it is, in fact, not helpful to the *res ipsa* analysis here because *Cox* involved an escalator rider and her husband who a brought personal injury action under the theory of *res ipsa* against a department store and an elevator company, for injuries she sustained when her jacket became lodged between moving handrail and stationary guide. Notwithstanding her failure to cite and discuss analogous *res ipsa* cases, she makes a significant concession when she wrote: "*While falls may occur without negligence*, equally clearly in this case, plaintiff's fall would not have occurred but for the failure to provide the assistance which plaintiff's nursing assessment and patient care classification clearly called for." (Doc. 37 at 4) (emphasis added).

The Government's reply points out that "Plaintiff provide[d] no case law to suggest that Arizona courts have ever accepted res ipsa loquitur in this type of case[,]" and her

---

[2] The Court declines the Government invitation to consider and verify the facts referenced in footnote 3 of its Second Motion for Summary Judgment. (Doc. 31 at 4) If the Government believed that these facts contained in its first Statement of Facts, doc. 26, filed in connection with its first summary judgment motion, it should have included them in its second Statement of Facts for the pending motion, doc. 32. A district court should not be required to flip back and forth through the record to find facts relevant to a dispositive motion. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

citations to *Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (Ariz. 1984) and *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 706 P.2d 364 (Ariz. 1985) are not helpful to the narrow question before the Court. (Doc. 39 at 1-2) "*Coburn* involved a suicidal patient at a hospital who jumped out of a fourth story window; *Markowitz* involved an injury a young man sustained while diving at Lake Havasu." (*Id*. at 2) "Neither case addresses *res ipsa loquitur*, and in any event, *Markowitz* was superceded by [A.R.S] 33-1551." (*Id.*) *See Wringer v. United States*, 790 F.Supp. 210, 212 (D.Ariz. 1992).

**VI. Conclusion**

Arizona law does not favor the *res ipsa loquitur* doctrine in medical negligence cases in which a hospitalized patient sustains an injury from either a fall or other unexplained occurrence. For forty years from *Faris v. Doctors Hospital, Inc*., 18 Ariz.App. 264, 501 P.2d 440 (Az.Ct.App. 1972) through the 2012 decision *McShane-Powers*, 2012 WL 504030, Arizona courts have

> never applied the res ipsa loquitur doctrine to relieve a claimant of the necessity of securing expert testimony when such testimony would be required to establish the prerequisites for applying the doctrine. Res ipsa loquitur is applicable "'only when it is a matter of common knowledge among laymen or medical [experts], or both, that the injury would not ordinarily have occurred if due care had been exercised.'"

*Id.*, 2012 WL 504030 at 4 (quoting *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 321, 183 P.3d 1285, 1289 (Az.Ct.App. 2008)). To apply the *res ipsa loquitur* doctrine to a patient's unexplained fall from a hospital toilet in the face of express Arizona authority that the doctrine is inapplicable to patients' unexplained falls from a hospital bed or emergency room cart would be contrary to the strict construction required of the FTCA. *See United States v. Nordic Village, Inc*., 503 U.S. 30, 33 (1992) (FTCA is strictly construed, and all ambiguities are resolved in favor of the sovereign). An injury sustained in a fall by a hospitalized patient fails to meet the first element of Arizona's *res ipsa loquitur* doctrine as the injury is not "of a kind that ordinarily does not occur in the absence of negligence." *Falcher*, 19 Ariz. App. at 251, 506 P.2d at 291 ("We cannot hold, as a matter of law, that in the common experience of laymen, patients do not ordinarily fall from hospital beds or carts

absent a failure to exercise due care.").

Moreover, as the Government points out, Plaintiff also fails to meet the third *res ipsa* element that she was not "in a position to show the particular circumstances that caused the offending agency or instrumentality to operate to her injury." *Sanchez*, 218 Ariz. at 321, 183 P.3d at 1289 (quoting *Lowrey*, 202 Ariz. at 192, 42 P.3d at 623). While Plaintiff cannot remember the circumstances regarding her fall and there are no known eye witnesses to her fall, "Plaintiff's recollection of her fall is not the only source of information from which she [has] learned of the circumstances regarding her fall." (Doc. 39 at 3) Other sources exist, such as, Plaintiff's medical records which her counsel has used extensively in opposing the Government's summary judgment motion. Without the benefit of a liability expert and the inapplicability of the *res ipsa loquitur* doctrine, Plaintiff is unable to establish a *prima facie* case of medical negligence against the Government. The Court will grant the Government's Second Motion for Summary Judgment and terminate this case.

Based on the foregoing,

**IT IS ORDERED** that Defendant's Second Motion for Summary Judgment, doc. 31, is **GRANTED**. The Clerk is kindly directed to enter judgment in favor of the United States and terminate this action.

Dated this 12th day of June, 2012.

Lawrence O. Anderson
United States Magistrate Judge